UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY JONES,<br><br>                Plaintiff,<br><br>        v.<br><br>JIMENEZ, et al.,<br><br>                Defendants. | Case No.: 1:14-cv-02045-LJO-SAB (PC)<br><br>ORDER REQUIRING PLAINTIFF TO FILE A SECOND AMENDED COMPLAINT OR NOTIFY THE COURT OF WILLINGNESS TO PROCEED ON ONE OF CLAIMS FOUND TO BE COGNIZABLE |

Plaintiff Jeremy Jones is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff filed the instant action on December 22, 2014. On February 27, 2015, the Court dismissed Plaintiff's complaint for failure to comply with Rule 8 of the Federal Rules of Civil Procedure. After receiving extensions of time, Plaintiff filed an amended complaint on July 24, 2015.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.
## COMPLAINT ALLEGATIONS

In September 2010, Plaintiff was transferred confined to a wheelchair to the California Correctional Institution (CCI) in Chino, California. Upon his arrival, Plaintiff was placed into a clinic holding cell and forced to live on the floor for weeks in anguishing pain due to his disability. Once CCI was made aware of imminent civil litigation against prison official at Plaintiff's previous institution, it was CCI's sole purpose to try to prove that Plaintiff was faking his documented injuries. Plaintiff's wheelchair was confiscated and Doctors Tate and Lee refused to properly evaluate Plaintiff and denied treatment. Because Plaintiff was in too much pain to walk, he was deemed a disciplinary problem and placed in a management cell and denied all access to any type of medical treatment for months. Plaintiff was forced to institute a hunger strike in order to obtain his personal property with all the necessary documentation to prove his medical condition. After almost four days, Plaintiff was

1  placed back into the same clinic holding cell and threatened to be force feed by drilling a hole in his
2  stomach.  Plaintiff then agreed to break the strike if he was given his property and properly evaluated
3  according to his valid documentation from his medical records.  Once Plaintiff was issued his
4  property, he ended the hunger strike only to have his evidence refused to be reviewed by Doctors Tate
5  and Lee.  Both doctors refused to evaluate or treat Plaintiff and he was placed back on the floor of a
6  management cell where he was held hostage anguishing in pain and unable to shower or maintain
7  proper hygiene for months.  During this time, Plaintiff's mental health deteriorated by the inability to
8  properly bathe, go to yard, or receive any type of medical care.  The physical and mental torture was
9  made worse by the fact that Plaintiff's toilet constantly leaked soiled water all over his sheets and
10 blankets.  Plaintiff was then forced to act out in order to get cleaning supplies to clean his living area.
11         Plaintiff suffers from two blown disks in his lower back and chronic nerve irritation in both
12 legs, which made living on the floor torture, and the constant clean up made it much more
13 excruciating.  Despite the unsanitary conditions, prison officials refused to move Plaintiff to a different
14 cell unless he walked on his own.  As long as officials had to obtain a wheelchair, Plaintiff was
15 subjected to disciplinary (write-ups) and kept in the unsanitary conditions for a longer period of time.
16 As Plaintiff began exercising his right to appeal, the retaliation got worse and included destruction of
17 all his non-allowable property that was to be sent home, including nine years of pictures mostly of his
18 children growing up that cannot be replaced.  The game of trying to "break" Plaintiff or force him to
19 walk even carried over to his custody hearing.  Plaintiff was told by the Lieutenant that it came from
20 the Captain that if he didn't walk on his own, the Judge would be told he refused to show up.
21 Thankfully, two officers carried Plaintiff to his hearing one on each arm.  However, this method of
22 ambulation took a major toll on Plaintiff's back and a medical code had to be activated with the
23 Plaintiff being taken out of his cell on a stretcher.  Once at the medical facility, Plaintiff was not only
24 denied treatment by Dr. Tate in an emergency situation, but he was humiliated and treated less than a
25 human being when he was denied access to a bedside urinal and told to "go ahead and pee on
26 yourself."  The situation eventually turned violent when the Plaintiff was maliciously assaulted and
27 put into the hospital with another blown disk and a condition called "Costochondritis," where the
28 Plaintiff's ribs were pulled away from his chest plate by correctional officers Harris and Chamberlin.

1  In order to receive treatment for this assault, Plaintiff had to remain in the Coleman cell, after he was
2  dragged across the yard and thrown in to by officers Harris and Chamberlin, along with sergeant
3  Kephart for six days on another hunger strike.  Plaintiff was left in the cell without water, blankets,
4  sheets or mattress and Plaintiff was required to urinate in a milk carton.
5        After Plaintiff obtained the necessary proof to confirm his validated medical condition,
6  correctional officer Stowers began putting bugs in his food, and Plaintiff had no choice but to refuse
7  his food trays for over a month.  Prior to the food contamination, Plaintiff was "sexually harassed" by
8  correctional officer Jiminez.  Jiminez would "peer" in Plaintiff's cell while he was urinating a filed a
9  false incident report to cover up her predatory behavior.
10       Not long after the food tampering, Plaintiff was thrown back into a management cell which
11 was full of trash on the floor and satanic symbols covered the walls in blood.  Plaintiff was not
12 provided cleaning supplies which subjected him to all sorts of diseases.  Plaintiff's mail was thrown
13 over the tier and officer Jiminez opened Plaintiff's cell door without placing him in restraints trying to
14 provoke Plaintiff.  Even after Plaintiff was given a bogus security housing term and arbitrarily
15 confined and shipped to the segregating housing unit, Jiminez still made it her mission to volunteer for
16 overtime in Plaintiff's new housing unit just to continue the harassment.  The floor staff began
17 participating in the retaliation by repeatedly tearing up Plaintiff's cell, taking his television, personal
18 food, and tampering with his shower chair so he could not shower.  Plaintiff was also slammed up
19 against the wall.

20                                                        **III.**
21                                                  **DISCUSSION**
22       **A.      Sexual Harassment**
23       The Eighth Amendment protects prisoners from inhumane methods of punishment and from
24 inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  In
25 some instances, infliction of emotional pain may constitute cruel and unusual punishment prohibited
26 by the Eighth Amendment.  See Jordan v. Gardner, 986 F.2d 1521, 1525-1531 (9th Cir. 1993 (en
27 banc).
28

The Eighth Amendment protects inmates from repetitive and harassing searches and from sexual abuse. Hudson v. Palmer, 468 U.S. 517, 530 (1984); Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000). Sexual assault, coercion, and harassment may violate contemporary standards of decency and cause physical and psychological harm. See Jordan, 986 F.2d at 1525-1531. To state a claim for sexual harassment under the Eighth Amendment, a prisoner must establish that the alleged sexual harassment was egregious, pervasive, and/or widespread. See, e.g., Jordan v. Gardner, 986 F.2d at 1525-1531 (prison policy requiring male guards to conduct body searches on female prisoners); Watson v. Jones, 980 F.2d 1165, 1165-1166 (8th Cir. 1992) (correctional officer sexually harassed two inmates on almost daily basis for two months by conducting deliberate examination of genitalia and anus).

Plaintiff has not presented sufficient facts that he was subjected to egregious, pervasive, or widespread sexual harassment. Plaintiff contends only that on May 22, 2011, Defendant Jiminez (who is female) observed him urinate on one occasion, such allegation does not give rise to a constitutional Eighth Amendment claim. Although Plaintiff further contends that Jiminez continued to "come around to harass the Plaintiff forcing him to refuse his meds and trays," such allegations does not provide sufficient factual support to find Plaintiff was subjected to egregious, pervasive, or widespread sexual harassment. Accordingly, Plaintiff fails to state a cognizable Eighth Amendment claim based on the alleged sexual harassment.

**B.  Deliberate Indifference to Serious Medical Need**

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond

5

to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

### 1. Doctors Tate and Lee

Plaintiff contends that Doctors Tate and Lee denied him adequate medical treatment and confiscated his wheelchair and back brace based on a false report contained in Plaintiff's central file authored by Doctor Chen which stated that Plaintiff was observed running from a crime scene of a riot. Plaintiff contends that he has documentation to demonstrate that he was nowhere near the riot and he was in a "proned out" position at the time in question, and Doctors Tate and Lee never reviewed his medical file which contains documentation regarding his blown discs in his lower back. Because Plaintiff was forced to be carried to his child custody hearing he suffered a medical emergency when his back gave out. Plaintiff was taken by stretcher to the medical facility where Doctor refused to provide any treatment. Based on a liberal construction of Plaintiff's complaint, Plaintiff states a cognizable claim for deliberate indifference against Doctors Tate and Lee.

### 2. Nurse Grey

Plaintiff further contends that nurse Grey refused to evaluate Plaintiff's injuries to cover up the staff's wrong doing. After Plaintiff was retained in a cell for six days with no food or water, nurse Grey was summoned to evaluate Plaintiff and she arrived with three other nurses and encouraged them not to provide Plaintiff any real treatment. Nurse Grey took it upon herself to use Plaintiff as a "lab rat" to show a rookie nurse how to put in an IV, and Plaintiff felt like a "pin cushion." On the way to the hospital, it was discovered that IV was administered properly, and Plaintiff was "rushed almost 4 bags of fluids before his pressure and heart rate started to come down…." Plaintiff was diagnosed with Costocrondritis. Plaintiff's allegations against nurse Grey amount to nothing more than potential negligence which does not support a finding for "deliberate indifference" in violation of the Constitution. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Accordingly, Plaintiff fails to state as cognizable claim against nurse Grey.

///

2.      Doctor Garaparthi

Plaintiff contends that upon his return from the hospital, Dr. Garaparthi refused to follow the recommendations from the specialist to put Plaintiff back in his wheelchair or a walker, at the very least. Instead, Dr. Garaparthi placed Plaintiff on crutches for a few days and refused to order the use of a shower chair. Plaintiff's allegations demonstrate only a difference in medical opinion that by itself cannot establish deliberate indifference. Further, Plaintiff fails to demonstrate deliberate indifference by the alleged refusal of a shower chair. Accordingly, Plaintiff fails to demonstrate a cognizable claim for deliberate indifference against Dr. Garaparthi.

**C.      Retaliation**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Although Plaintiff contends that at the time of his transfer to CCI in September 2010, it was well known that Plaintiff had filed previous inmate appeals with the intent of pursuing the action to the Court, and he was thereafter not provided adequate medical treatment and was subjected to unsanitary conditions of confinement, Plaintiff does not allege sufficient facts to support a claim for retaliation. There is no causal connection between any alleged adverse action and the filing of any inmate grievance. Accordingly, Plaintiff fails to state a cognizable claim for retaliation.

**D.      Conditions of Confinement**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825,

7

847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).  To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety.  Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff submits that upon his arrival at CCI in a wheelchair, he was repeatedly tortured in an effort to require Plaintiff to walk on his own.  Plaintiff contends he was housed in a management cell for lengthy periods of time (over three months) which consisted of sleeping on the floor without a mattress, and he was not able to properly bathe, go to yard or receive any type of medical care.  In addition, the toilet constantly leaked soiled water all over his sheets and blankets, and bugs were intentionally placed in his food, and he was required to implement a hunger strike to receive appropriate treatment.  Plaintiff also contends Sgt. Wedertz was in charge of his placement and housing conditions and "mocked" and "teased" Plaintiff because he was stuck in the living conditions until he walked.

Based on Plaintiff's contentions in the first amended complaint, Plaintiff states a cognizable claim against Defendants Wedertz, Stowers, and Stratton, for conditions of confinement in violation of the Eighth Amendment.

8

**E.     Excessive Force**

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations omitted).  For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013).  The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

Plaintiff contends that sergeant Sigston ordered to have Plaintiff "viciously assaulted" by correctional officers Chamberlin and Harris while he was in wait restraints.  When he was on the ground and severely injured, Plaintiff was then dragged across the yard with the physical assistance of sergeant Kephart and thrown into a Coleman cell.  After Plaintiff was taken to the hospital, it was discovered that he suffered a third blown disc as a result of the assault and his ribs were pulled away from his chest plate causing a condition called Costocrondritis.

Plaintiff's allegations are sufficient to give rise to a cognizable claim for excessive force against Defendants Sigton, Chamberlin, Harris and Kephart.

**F.     Due Process Violation/Property Deprivation**

Plaintiff contends that after he began filing inmate appeals, the retaliation got worse and almost nine years of pictures of his family were destroyed.  Plaintiff makes the conclusory allegation that certain officers repeatedly tore up his cell and confiscated certain items, including a television, cable, earbuds,  and threw away certain canteen items.

Under the Fourth Amendment, a seizure of property "occurs when there is some meaningful interference with an individual's possessory interest in that property." United States v. Jacobsen, 466

U.S. 109, 113 (1984). The United States Supreme Court has held that "the Fourth Amendment has no applicability to a prison cell." Hudson v. Palmer, 468 U.S. 517, 536 (1984). Further, the Court noted, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." Id. at 528 n. 8.

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," Hudson, 468 U.S. at 533.

Plaintiff's allegations indicate that the alleged officers wrongfully and arbitrarily confiscated and destroyed his personal property. The unauthorized deprivation of property, be it negligent or intentional, does not give rise to a claim for relief under the Due Process Clause. Hudson, 468 U.S. at 533. Allegations of essentially random and unauthorized deprivations of personal property, do not allege a violation of a federal constitutional right. Although such unauthorized deprivations of personal property may amount to state law violations, they do not constitute federal due process violations. Consequently, Plaintiff's allegations regarding the confiscation of his personal property fails to give rise to a due process violation under § 1983.

### G. Due Process/Rules Violation Hearing

Plaintiff contends that a due process violation occurred when Chief Lundy allowed the watch commander working the night of the alleged incident was allowed to be the hearing officer of the rules violation report issued against him, and he was found guilty of a false rules violation.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that

must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472. In addition "[s]ome evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is *any* evidence in the record that could support the conclusion reached . . . ." Id. at 455-56 (emphasis added).

Here, Plaintiff's claim that he was found guilty of indecent exposure by an impartial hearing officer is sufficient to give rise to a due process violation against Chief Lundy.

**H.      Supervisory Liability**

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on *respondeat superior*, or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (citing Snow, 681 F.3d at 989) (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074-75; Lacey, 693 F.3d at 915-16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff names Wardens Gonzalez and Stainer, and Deputy Warden Hughes as Defendants based on "green wall" tactics. However, Plaintiff fails to allege anything more than conclusory allegations that do not support a finding of liability under section 1983. Accordingly, Plaintiff fails to state a claim for supervisory liability.

**I.     Inmate Appeals Process**

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

**J.     Conspiracy**

Although Plaintiff makes vague reference to a conspiracy by prison officials to violate his constitutional rights, Plaintiff fails to state a cognizable conspiracy claim.

To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of those constitutional rights. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001).

**K.     Improper Joinder**

As Plaintiff was advised in the Court's February 24, 2014 screening order, Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." However, unrelated claims that involve different defendants must be brought in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This rule is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that prisoners pay the required filing fees for their lawsuits and prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

The fact that claims are premised on the same type of constitutional violation(s) (e.g. excessive force) against multiple defendants does not make them factually related. Claims are related when they are based on the same precipitating event or on a series of related events caused by the same precipitating event. Unrelated claims involving multiple defendants belong in difference suits. George v. Smith, 507 F.3d at 607.

Although the Court has found that Plaintiff states a cognizable claim against Defendants Doctors Tate and Lee for deliberate indifference in violation of the Eighth Amendment, a cognizable claim against Defendants Wedertz, Stowers, and Stratton for conditions of confinement in violation of the Eighth Amendment, a cognizable claim for excessive force against Defendants Sigton, Chamberlin, Harris and Kephart, and a cognizable due process violation against Defendant Lundy, the incidents are not related and cannot be joined in one action. Accordingly, by way of amendment or notice, Plaintiff must choose which claim(s), if any, he wishes to proceed on in this action. If Plaintiff's amended complaint or notice violates Rule 20 despite this admonition, the Court will decide which claims shall proceed and dismiss any and all unrelated claims.

## IV.
## CONCLUSION AND ORDER

Plaintiff's complaint states a cognizable claim against Defendants Doctors Tate and Lee for deliberate indifference in violation of the Eighth Amendment, a cognizable claim against Defendants Wedertz, Stowers, and Stratton for conditions of confinement in violation of the Eighth Amendment, a cognizable claim for excessive force against Defendants Sigton, Chamberlin, Harris, and Kephart, and a cognizable due process claim against Defendant Lundy. Plaintiff has not sufficiently alleged facts for any other claims against any of the other named Defendants. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file a second amended complaint and is agreeable to proceeding *only* on the claim of deliberate indifference against Doctors Tate and Lee, OR only the conditions of

confinement claim against Defendants Wedertz, Stowers, and Stratton, OR only the excessive force claim against Defendants Sigton, Chamberlin, Harris, and Kephart, OR only the due process claim against Defendant Lundy, Plaintiff may so notify the Court in writing, and the Court will dismiss the other claims and Defendants, and will forward Plaintiff the necessary number of summons and USM-285 form(s) for completion and return.  Again, Plaintiff is advised that he cannot proceed on all four of the claims found to be cognizable in this single action as they are unrelated claims.

If Plaintiff opts to amend, his amended complaint should be brief.  Fed. R. Civ. P. 8(a).  Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).  With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

Plaintiff is advised that an amended complaint supersedes the original complaint.  Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  The amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint. Finally, Plaintiff is advised that, should he choose to amend, he may not bring unrelated claims in the same action.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff must either:
    a. File an amended complaint curing the deficiencies identified by the Court in this order, or
    b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only ONE of the claims found to be cognizable; and
3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated: **December 11, 2015**

UNITED STATES MAGISTRATE JUDGE