UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY JONES,<br><br>        Plaintiff,<br><br>    v.<br><br>JIMENEZ, et al.,<br><br>        Defendants. | Case No. 1:14-cv-02045-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>[ECF No. 105] |

Plaintiff Jeremy Jones is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed August 2, 2018.

**I.**

**BACKGROUND**

This action is proceeding on Plaintiff's due process and cruel and unusual punishment claims against Defendants Lundy and Schuyler relating to a rules violation hearing and resulting punishment of placement in the security housing unit for an indeterminate term which was unsanitary and unsafe.

Defendants filed an answer to the complaint on June 7, 2017. On June 8, 2017, the Court issued the discovery and scheduling order.

1

As previously stated, on August 2, 2018, Defendants filed the instant motion for summary judgment. Plaintiff filed an opposition on February 4, 2019, and Defendants filed a reply on February 11, 2019. Therefore, the motion is deemed submitted for review without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

## III.

## DISCUSSION

**A.  Summary of Plaintiff's Allegations**

In May 2011, Plaintiff was "sexually harassed" by correctional officer Jimenez when she peered into Plaintiff's cell as he was urinating even though he repeatedly told her "excuse me ma'am,

2

I'm using the restroom." Jimenez's partner overhead Plaintiff's statement and began to laugh saying "you caught Jones taking a piss." She realized she was caught and immediately began to make a scene to cover-up her behavior and proceeding to write a false rules violation report in which she gave multiple inconsistent statements. The statements were so inconsistent that she employed the assistance of her partner correctional officer Gonzalez to give a false statement in the investigative employee report. The Plaintiff was immediately deemed an "outcast." Captain Lundy assigned lieutenant C. Schuyler, who was the watch commander to whom officer Jimenez reported at the time of the incident in question, and lieutenant Schuyler was predisposed to find him guilty. Captain Lundy also denied Plaintiff a polygraph test.

At the rules violation hearing, Plaintiff was not allowed to question his accuser (officer Jimenez) because she was not present, he was not able to call witnesses, and he was not able to speak in his defense. Lieutenant Schuyler found Plaintiff guilty of the charge of indecent exposure.

As a result of the rules violation, Plaintiff was given a term in the Security Housing Unit (SHU). Plaintiff contends that, in the SHU, his cell was unsanitary because it had "large satanic symbols" that "covered the walls in blood" and exposed Plaintiff to "all sorts of diseases."

**B.     Statement of Undisputed Facts**

1. Plaintiff Jeremy Jones is an inmate currently in the custody of the California Department of Corrections and Rehabilitation. (Third Am. Compl. at ¶ 3; ECF No. 57.)

2. At all relevant times in the Third Amended Complaint, Plaintiff was housed at California Correctional Facility. (Id. ¶ 1.)

3. On May 22, 2011, Plaintiff received a rules violation report for indecent exposure. (Id. ¶ 2.)

4. Plaintiff received a written copy of the rules violation report on May 31, 2011. (Declaration of Tyler Onitsuka ("Onitsuka Decl.") ¶ 3, Ex. B at 1.)

5. At the time Plaintiff was issued the rules violation report, he was housed in the Security Housing Unit ("SHU"). (Onitsuka Decl. ¶ 4, Ex. C (Pl. Dep.) at 54:1-6.)

6. Before receiving the rules violation report, Plaintiff had never had any interactions with Defendant Lundy. (Onitsuka Decl. ¶ Ex. C at 25:9-18.)

7. Lundy assigned Defendant Schuyler, a correctional lieutenant, as the hearing officer for the rules violation report hearing. (Third Am. Compl. at ¶ 9.)

8. Plaintiff had not had any interactions with Schuyler before the hearing on the rules violation report. (Onitsuka Decl. ¶ 4, Ex. C at 31:1-25.)

9. Plaintiff received investigative employees for his rules violation report hearing. (Onitsuka Decl. ¶ 3, Ex. B at 8.)

10. Plaintiff's rules violation report hearing occurred on June 30, 2011. (Onitsuka Decl. ¶ 3, Ex. B at 2.)

11. At the hearing, Plaintiff acknowledged receiving copies of his CDC-115, CDC 115-A, CDC-115 MH, Investigative Employee Report, CDCR-837 Incident Report, and Miranda Rights Form more than twenty-four hours before the hearing. (Onitsuka Decl. ¶ 3, Ex. B at 2.)

12. At the hearing, Plaintiff provided a verbal statement on his own behalf. (Onitsuka Decl. ¶ 4, Ex. C at 43:10-25.)

13. At the hearing, Plaintiff provided a written statement on his own behalf. (Onitsuka Decl. ¶ 3, Ex. B at 3.)

17. Plaintiff brought written inmate statements to the hearing, but would not give them to Schuyler. (Onitsuka Decl. ¶ 4, Ex. C at 47:10-24.)

18. At the hearing, Plaintiff claimed that the inmate statements he brought would attest to his character. (Onitsuka Decl. ¶ 3, Ex. B at 3.)

19. Schuyler granted Plaintiff's request for the attendance of inmate witnesses, but they were not summoned for the hearing. (Onitsuka Decl. ¶ 3, Ex. B at 3.)

20. Schuyler considered the original rules violation report in making his decision at the hearing. (Onitsuka Decl. ¶ 3, Ex. B at 4.)

21. Schuyler considered Plaintiff's statements in making his decision at the hearing. (Onitsuka Decl. ¶ 3, Ex. B at 4.)

22. Schuyler considered the testimony of Correctional Officer J. Gonzales in making his decision at the hearing. (Onitsuka Decl. ¶ 3, Ex. B at 4.)

23. Schuyler found Plaintiff guilty of the indecent exposure rules violation. (Onitsuka Decl. ¶ 3, Ex. B at 4.)

24. The guilty finding from the hearing did not affect the duration of Plaintiff's sentence. (Onitsuka Decl. ¶ 4, Ex. C at 53:12-23.)

25. As a result of the guilty finding from the hearing, Plaintiff lost ninety days of canteen privileges. (Onitsuka Decl. ¶ 3, Ex. B at 4.)

26. On July 12, 2010, Plaintiff received a copy of the written decision for the hearing. (Onitsuka Decl. ¶ 3, Ex. B at 2.)

27. After the guilty finding, Plaintiff alleges that he was placed in a SHU cell with trash on the floor and "satanic rituals all over the walls covered in blood." (Onitsuka Decl. ¶ 4, Ex. C at 23:2-11.)

28. One day after he moved into the cell, Plaintiff complained to Lundy and Schuyler about the conditions of the cell. (Onitsuka Decl. ¶ 4, Ex. C at 57:25-58:25.)

29. Less than two days after Plaintiff moved into the cell, Plaintiff received cleaning supplies, including gloves and disinfectant, to clean his cell. (Onitsuka Decl. ¶ 4, Ex. C at 61:12-25.)

30. Seventeen days after he moved into the cell, Plaintiff complained to Lundy about the condition of his cell. (Onitsuka Decl. ¶ 4, Ex. C at 113:20-114:3.)

31. After Plaintiff complained to Lundy, Lundy moved Plaintiff out of the cell. (Onitsuka Decl. ¶ 4, Ex. C at 113:20-114:8.)

32. Plaintiff did not contract any illnesses as a result of his stay in the cell. (Onitsuka Decl. ¶ 4, Ex. C at 23:12-14.)

**C.** **Analysis and Findings on Motion**

Defendants argue there was no due process violation because Plaintiff had no liberty interest in the outcome of the rules violation report hearing. In addition, even if a liberty interest is established, Plaintiff received all the due process for which he was entitled. Defendants further argue that there was no Eighth Amendment conditions of confinement violation because the conditions were not sufficiently serious. In the alternative, Defendants argue they are entitled to qualified immunity because they acted reasonably under the circumstances.

In opposition, Plaintiff argues that his inmate witnesses were not available and were not called at the rules violation hearing. In addition, he was not provided assistance by the investigative employee and the SHO was biased because he was the watch commander on the night of the incident. Plaintiff further argues that he was not allowed to confront his accuser or any other adverse witness.

1. Due Process Violation

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). To state a claim, Plaintiff must first identify the interest at stake. Wilkinson, 545 U.S. at 221. Liberty interests may arise from the Due Process Clause itself or from state law. Id. The Due Process Clause does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue. Id. at 221-23 (citing Sandin v. Conner, 515 U.S. 472, 481-84 (1995)) (quotation marks omitted). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Wilkinson, 545 U.S. at 221 (citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general population instead of administrative segregation. See Hewitt v. Helms, 459 U.S. 460, 466-68 (1983); see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation fails within the terms of confinement ordinarily contemplated by a sentence).

**a. Liberty Interest**

Plaintiff has not shown that Defendants deprived him of a liberty interest as a result of the rules violation report.

A prisoner is entitled to due process before being disciplined when the discipline imposed will inevitably affect the duration of his confinement or "imposes atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484, 487. In determining whether a restraint is an "atypical and significant hardship," courts consider whether the challenged condition mirrored the conditions imposed on inmates in administrative segregation. See Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2013) (placement in segregated housing not a deprivation of real substance).

It is undisputed that the length of Plaintiff's sentence was not affected by the outcome of the hearing. (Onitsuka Decl. ¶ 4, Ex. C at 53:12-23.); see also Johns v. Small, No. 10CV0749-NMA BLM, 2010 WL 6764165, at *5 (S.D. Cal. Dec. 21, 2010), report and recommendation adopted by, No. 10CV749-MMA BLM, 2011 WL 2115834 (S.D. Cal. May 27, 2011) (finding no liberty interest in loss of good time credits for inmate with indeterminate life sentence because "it does not appear that the loss of custody credits could have any direct impact on the length of his incarceration." ).) Nor did Plaintiff suffer a change that was "atypical and significant" in relation to ordinary incidents of prison life. It is undisputed that Plaintiff was in the SHU when he received the rules violation report, and was returned to the SHU following the adjudication of the rules violation report. (Onitsuka Decl. ¶ 4, Ex. C at 23:2-11, 54:1-6.) Plaintiff now appears to contend that he was in the administrative segregation unit on the date that he received the rules violation report; however, mere placement in the SHU, does not implicate a liberty interest. Serrano v. Francis, 345 F.3d at 1078 (citing Sandin, 515 U.S. at 486.) Furthermore, Plaintiff's loss of canteen privileges is not an atypical and significant hardship, but is simply a change consistent with imprisonment. Christ v. Blackwell, No. 2:10-cv-0760-EFB P, 2015 WL 5138126, at *7 (E.D. Cal. Sept. 1, 2015) (citing Koerner v. Angelone, 203 F.3d 831 (9th Cir. 1999) ("loss of privileges to the day/night yard, dayroom, telephones, canteen, and quarterly packages … do not impinge on a liberty interest created by the Due Process clause of its own force."). Consequently, because Plaintiff has not shown a liberty interest in the outcome of the rules violation report, this is a sufficient basis to grant Defendants' motion for summary judgment.

**b.     Procedural Due Process**

Nonetheless, even if Plaintiff did have a liberty interest in the outcome of the rules violation report, he received all the process for which he was entitled. "When protected interests are implicated, the right to some kind of prior hearing is paramount…." Neal v. Shimoda, 131 F.3d 818, 830 (9th Cir.

1997) (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-70 (1972)). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995). In addition, "some evidence" must support the decision of the hearing officer, Superintendent v. Hill, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of reliability, Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached. . . ." Hill, 472 U.S. at 455-56.

(1). Defendant Lundy

Plaintiff claims that Defendant Lundy violated his due process rights because he assigned Schuyler as the hearing officer at the rules violation hearing. It is undisputed that Lundy had no involvement in the hearing. (Onitsuka Decl. Ex. C at 88:8-16.) Plaintiff argues that Schuyler's assignment as the hearing officer violated Title 15 of the California Code of Regulations. The following exchange took during Plaintiff's deposition:

> Q. Right. Sure. You indicated las week that you believed that Captain Lundy wanted you to be found guilty of the rules violation. What evidence do you have to support that conclusion?
>
> A. The evidence is he would have gave me fair and impartial hearing officer and not the watch commander the night of the incident, which violated 3329 of the Title 15. He was reported to that night. He wasn't supposed to have – if he had anything with that 115 the night of the incident, he was not supposed to be a hearing officer, period. It states that clear as day in the Title 15.

8

> Q. Any other evidence?
>
> A. What other evidence do I need? He knew what he was doing. He knew he wanted me to get found guilty.

(Onitsuka Decl. Ex. C at 90:19-91:8.)

Plaintiff has failed to set forth sufficient evidence that Defendant Lundy violated his due process rights. It is undisputed that Defendant Lundy was not involved in the actual hearing on the rules violation report, and did not play any role in ensuring that Plaintiff received advance written notice of the disciplinary charges, the opportunity to cross-examine witnesses, if appropriate, or a written statement by the factfinder. (Onitsuka Decl. ¶ 4, Ex. C at 88:8-16.) Thus, because Plaintiff had no interaction with Lundy before the incident, there is no showing that he actually caused any alleged due process violations. (Onitsuka Decl. ¶ Ex. C at 25:9-18.)

Furthermore, contrary to Plaintiff's contention, Lundy did not violate Title 15 by assigning Schuyler as the hearing officer. Title 15 of the California Code of Regulations section 3320(h)[1] precludes correctional staff who observed the underlying rules violation from presiding over the charges:

> Staff who observed, reported, classified, supplied supplemental reports to, or investigated the alleged rules violation; who assisted the inmate in preparing for the hearing; or for any other reason have a predetermined belief of the inmate's guilt or innocence shall not hear the charges or be present during deliberations to determine guilt or innocence and disposition of the charges.

Even assuming the validity of Plaintiff's argument that Schuyler was the watch commander at the time he received the rules violation report, nothing in Title 15 precludes Schuyler from presiding over the rules violation hearing. It is undisputed that Schuyler was not involved in issuing, observing, or investigation the rules violation report, and Plaintiff did not even come in contact with him until the actual hearing. (Onitsuka Decl. ¶ 4, Ex. C at 31:1-25.)

///

///

---

[1] The Court presumes that Plaintiff's reference to section 3329 in his deposition was a transcription error because that section deals with aggravating factors at the rules violation sentencing, and not who may preside over the hearing.

1    Moreover, even if Title 15 of the California Code of Regulations precluded Lundy from
2  assigning Schuyler as the hearing officer, a violation of a state regulation does not give rise to a
3  constitutional violation. See, e.g., Jones v. Woodward, No. 1:14-cv-02084-LJO-SAB (PC), 2016 WL
4  7374585, at *10 (E.D. Cal. Dec. 19, 2016) ("A violation of state regulations or prison policies,
5  standing alone, cannot form the basis of a viable section 1983 claim.") (citing West v. Atkins, 487
6  U.S. 42, 48 (1988)).
7    For these reasons, Defendant Lundy is entitled to summary judgment on Plaintiff's due process
8  claim.
9        (2).    Defendant Schuyler
10   Plaintiff received all of the procedural due process for which he was entitled at the rules
11 violation hearing on June 30, 2011. It is undisputed that Plaintiff received a copy of the rules violation
12 report, along with all the supporting documents, more than twenty-four hours before the hearing.
13 (Onitsuka Decl. ¶ 3, Ex. B at 2.) Plaintiff also received a written statement by Schuyler after the
14 hearing was completed, which explained the reason for the decision. (Onitsuka Decl. ¶ 3, Ex. B at 2.)
15 Plaintiff was also provided an opportunity to present evidence in his defense, and he received
16 assistance from an investigative employee. (Onitsuka Decl. ¶ 3, Ex. B at 8.)
17   Furthermore, Plaintiff was provided the opportunity to present evidence in his defense.
18 Plaintiff received an investigative employee to assist him. (Onitsuka Decl. ¶ 3, Ex. B at 8.)
19 Plaintiff was present at the hearing, and provided both verbal and written statements in his defense.
20 (Onitsuka Decl. ¶¶ 3-4, Ex. B at 3, Ex. C at 43:10-25.) Plaintiff also presented written statements by
21 inmates Perez, Avila, Lopez, and Palmer, but would not give the statements to Schuyler. (Onitsuka
22 Decl. ¶ 4, Ex. C at 47:10-24.) Schuyler asked Plaintiff what information the witnesses would provide
23 if they were questioned, and Plaintiff indicated they would attest to his character. (Onitsuka Decl. ¶ 3,
24 Ex. B at 3.)
25   Plaintiff contends that he had specific questions for each of his witnesses that he was not
26 allowed to ask at the hearing. However, it is clear from the record that each of Plaintiff's witnesses
27 was either not present for the events at issue, or would have provided testimony substantially
28 cumulative of Plaintiff's own written statement. (Compare Onitsuka Decl. Ex. C at 48:22:50:4 ("they

would have testified to the facts that they heard me telling this officer that, "Excuse me, ma'am, I'm using the restroom") with Ex. B at 12 ("she came out of nowhere when I was using the restroom").) Both statements (as provided at his deposition and rules violation hearing) indicate that Plaintiff claimed to simply be using the restroom and not intentionally exposing himself to officer Jimenez. Indeed, Plaintiff fails to set forth any specific questions he had with respect to the witnesses. Therefore, irrespective of whether Plaintiff requested these witnesses, as he now contends, they would not have provided useful information, and the hearing officer would not have been required to hear from them. See, e.g., Wolff, 418 U.S. at 566 (prison officials may choose to refuse an inmate's request to call witnesses for reasons of "irrelevance, lack of necessity, or the hazards presented in individual cases"); Jones v. Woodward, No. 1:14-cv-02084-LJO-SAB (PC), 2016 WL 7374585, at *9 (E.D. Cal. Dec. 19, 2016) ("there is no requirement that certain evidence be reviewed prior to a finding of guilt."); Hall v. Pliler, No. CIV S-05-1556-CMK-P, 2010 WL 4746177, at *10 (E.D. Cal. Nov. 16, 2010) (no due process violation where hearing officer excluded witnesses that "would not add any additional relevant information at the hearing"); Cal. Code. Regs. tit. 15, § 3315(e) (allowing hearing officer to deny requests for witnesses). Nor can Plaintiff complain that he was not allowed to cross-examine the reporting employee or other witnesses; such confrontation is not required for disciplinary hearings. See Wolff v. McDonnell, 418 U.S. at 568; Baxter v. Palmigiano, 425 U.S. 308, 322-23 (1976) ("Mandating confrontation and cross-examination, except where prison officials can justify their denial on one or more grounds that appeals to judges, effectively preempts the area that Wolff left to the sound discretion of prison officials"); Santibanez v. Havlin, 750 F.Supp.2d 1121, 1128 (E.D. Cal. 2010) ("[A]s a general rule, inmates 'have no constitutional right to confront and cross-examine adverse witnesses' in prison disciplinary hearings."); Gibbs v. Carson, No. 13-CV-0860-THE, 2016 WL 641635, at *4 (N.D. Cal. Feb. 18, 2016) ("[T]he Due Process Clause does not require that prisons allow inmates to cross-examine their accusers.").

Plaintiff further claims that officer Barnett who was assigned as his investigative employee failed to conduct a proper investigation. First, there is no constitutionally guaranteed right under Wolff to assignment of an investigative employee. See, e.g., Trujillo v. Vaughn, 269 Fed. Appx. 673, 674 (9th Cir. 2008) ("the assignment of an investigative employee … does not equate to a

11

1  determination that he had a federal due process right to such assistance pursuant to Wolff."); Simpson
2  v. Dexter, No. CV 09-0300 DDP (RNB), 2009 WL 6340117, at *4 (C.D. Cal. Aug. 13, 2009) ("To the
3  extent that petitioner is contending … that he was denied an investigative employee, the Court finds
4  that neither Wolff nor any other Supreme Court case guaranteed an inmate the assistance of an
5  investigative employee and that such a right is unique under State law."). Plaintiff does not claim, and
6  the Court does not find, that he is illiterate or was unable to understand the issues due to the
7  complexity, the reasons recognized by Wolff. Indeed, the rules violation hearing report specifically
8  noted that Plaintiff speaks English, was literate, was able to comprehend the nature of the charges or
9  disciplinary process, and had no mental or physical limitations that would affect his ability to
10  participate in the hearing process. (Onitsuka Decl., Ex. B.)

11  However, even assuming Plaintiff had a federal due process right to an investigative employee,
12  Plaintiff's objection to officer Barnett as his investigative employee is based on his desire to have
13  officer Lopez as his investigative employee. The Constitution does not guarantee an inmate to an
14  investigative employee of his choice. Indeed, Plaintiff fails to support his conclusory claim that
15  officer Barnett failed to conduct any investigation on his behalf. On June 21, 2011, officer Barnett
16  advised Plaintiff that the purpose of the assignment as his investigative employee was to gather
17  incomplete and/or missing relevant information regarding the rules violation report. (Onitsuka Decl.,
18  Ex. B.) Plaintiff objected to the assignment because he wished to have officer Lopez as his
19  investigative employee. (Id.) On the investigative report, Barnett indicated that Plaintiff had received
20  all the pertinent supplemental reports, and documented a written statement regarding the rules
21  violation. (Onitsuka Decl., Ex. B.) On this same date, Barnett interviewed the reporting officer
22  Jimenez who provided a statement. (Id.) Barnett also interviewed sergeant Bonham, officer Gonzalez
23  and officer Mendoza and documented their statements. (Id.) While Plaintiff may have preferred to
24  have a different investigative employee assigned, there is insufficient evidence to find that Barnett
25  violated Plaintiff's qualified right to assistance under Wolff. Further, Plaintiff fails to support his
26  conclusory claim that officer Barnett failed to conduct any investigation on his behalf. Plaintiff fails
27  to submit evidence indicating what additional information he sought and how such information would
28  have aided in his defense. See, e.g., Palmer v. Salazar, No. C 08-05378 SI (pr), 2011 WL 3046217, at

*8 (N.D. Cal. July 26, 2011) (investigative employee entitled to summary judgment because plaintiff failed to specify what evidence was not collected or how such evidence would have been necessary in his defense).

Finally, there was "some evidence" to support the finding of guilt. Schuyler reviewed the rules violation report written by officer Jimenez, Plaintiff's statements during the hearing, and a statement by officer J. Gonzales that corroborated Jimenez's version of events. (Onitsuka Decl. ¶ 3, Ex. B at 4.) Schuyler summarized his review of the evidence and determination of guilt as follows:

> Officer M. Jimenez's statement that she saw him fondling his erect penis and continued to do so after he was told to stop indicates an [sic] deliberate act versus JONES's statement that this was an accident, that he was just going to the bathroom, and that he did not know she was there. The statement provided by JONES in the hearing and his written account seem to rely on his statements concerning his character as described by him and not the facts at the time of the incident.

(Onitsuka Decl. Ex. B at 4.) This evidence satisfies the "some evidence" standard under Wolff. See Jones v. Woodward, No. 1:14-cv-02084-LJO-SAB (PC), 2016 WL 7374585, at *10 (E.D. Cal. Dec. 19, 2016) ("some evidence" standard satisfied where conviction "was based mainly on the reports authored by several officers, each of whom had first-hand knowledge of the information contained in the reports").

Based on the foregoing, there is no genuine dispute of material fact that Plaintiff received all the required due process, and Defendants are entitled to summary judgment.

    2.    <u>Eighth Amendment Conditions of Confinement</u>

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the

Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To prevail on a conditions of confinement claim, a plaintiff must first "make an 'objective' showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation." Johnson, 217 F.3d at 731. The plaintiff must also "make a 'subjective' showing that the prison official acted 'with a sufficiently culpable state of mind.'" Id. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement . . . if he knows that [the inmate faces] a substantial risk of serious harm and disregards that risk by failing to take measures to abate it." Farmer, 511 U.S. at 847.

### a. Objectively Serious Conditions of Confinement

Plaintiff claims that the cell he was placed in after his rules violation hearing constituted cruel and unusual punishment because it had "trash on the floor," and "satanic rituals all over the walls covered in blood." (Onitsuka Decl. ¶ 4, Ex. C at 23:2-11.)

It is undisputed that Plaintiff received cleaning supplies less than two days after he placed in the cell. (Onitsuka Decl. ¶ 4, Ex. C at 61:12-25.) It is further undisputed that Plaintiff was moved out of the cell in less than three weeks. (Onitsuka Decl. ¶ 4, Ex. C at 61:12-25, 113:20-114:8.) Furthermore, Plaintiff acknowledges that he did not suffer any ill effects from his stay in the cell. (Onitsuka Decl. ¶ 4, Ex. C at 23:12-14.)

Conditions of confinement which are not "severe or prolonged" and temporary in nature, such as Plaintiff's in this instance, do not give rise to a claim under the Eighth Amendment. See, e.g., Anderson v. Cnty. of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995) (no Eighth Amendment claim where inmate was shackled to pit toilet grate overnight with only a paper shirt because "plaintiffs here have not shown . . . that the sanitary limitations imposed upon them were more than temporary"); see also Yeley v. Skrah, No. 1:16-cv-00603-MC, 2017 WL 2562107, at *2 (D. Or. June 13, 2017) (summary

judgment granted against an inmate who was placed in cell with fecal matter clogging vents and walls along with unpleasant odor, finding his placement in the cell for a total of four days until he obtained cleaning supplies insufficient, as a matter of law, under the Eighth Amendment) (citing Hearns v. Terhune, 413 F.3d 1036, 1042-43 (9th Cir. 2005). Thus, even assuming the validity of Plaintiff's claim, the conditions as alleged are not sufficiently serious to state a claim under the Eighth Amendment.

        **b.     Subjectively Disregard Serious Condition of Confinement**

Even if the conditions were "objectively serious," there is no dispute that Defendants did not subjectively disregard a serious risk to his health.

Plaintiff complained to Defendants Lundy and Schuyler the day after he was placed in the SHU. (Onitsuka Decl. ¶ 4, Ex. C at 57:25-58:25.) Within 48 hours after he was placed in the cell, and within 24 hours after he complained to Defendants, Plaintiff received cleaning supplies for his cell. (Onitsuka Decl. ¶ 4, Ex. C at 61:12-25.) The next time Plaintiff spoke with Defendant Lundy, seventeen days after he had been placed in the cell, Lundy moved him out of the cell. Indeed, at his deposition, Plaintiff acknowledged the following:

> Q. Do you remember speaking about this at any other point with Captain Lundy or Lieutenant Schuyler?
>
> A. Yeah. I talked to Captain Lundy, and I went to the cages. That's like – like I said, I was in there 17 days. We went to the yard right around that time or whatever, and I told him straight up, "Look, I'm not going back to that cell," because they wasn't letting me get no yard because they knew what I was going to do.
>
> Q. When was that that you had this conversation?
>
> A. This was the last day that I was there. I was in that cell, and that's how I ended up getting out of that cell. That's when he moved me to – he got me out of that cell and I ended up moving to 7 block.

(Onitsuka Decl. ¶ 4, Ex. C at 23:12-14.) Defendants' action in listening and responding to Plaintiff's complaints by removing him from the cell are inconsistent with an "unreasonable disregard" of an excessive risk to Plaintiff's health or safety. While Defendants may not have responded as quickly as he requested or in the manner in which he requested, Defendants undoubtedly responded reasonably to

his complaints. Accordingly, there is no genuine issue of disputed fact as to whether Defendants were deliberately indifferent to Plaintiff's health or safety, and Defendants are entitled to summary judgment.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and

2. The Clerk of Court be directed to enter judgment in favor of Defendants, and terminate this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 13, 2019**

UNITED STATES MAGISTRATE JUDGE